E-FILED
Friday, 05 August, 2005 02:16:24 PM
Clerk, U.S. District Court, ILCD

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | *Mays v. Snyder, et al.,* |
| | ) SS. | *Case No.: 04-1001* |
| COUNTY OF KNOX | ) | |

## AFFIDAVIT

I, **Manuel Rojas**, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1. In December 2001, I was employed by the Illinois Department of Corrections as a Chaplain II at the Hill Correctional Center and continue to remain in said position. I am an ordained Protestant minister.

2. As part of my duties, I attempt to familiarize myself with the various religions practiced by the inmates at Hill Correctional Center and to advise the Warden and other administrators on how to balance the inmates' religious needs with the administrative and security requirements of the prison.

3. One area in which I advise the administrative staff are religious diets. Special religious diets are expensive and require additional administrative attention to implement. For example, special outside vendors may be required to supply the food for the diet, contracts for outside vendors have to be approved which require special monetary authorization for purchases from said vendors. Furthermore, depending on the diet and staffing concerns, additional staff may be needed to administer the religious diet to the inmate(s). Therefore, an attempt is made to limit special religious diets to those inmates who hold a sincere belief and faithfully observe such diets.

4. Prior to receiving a vegan diet, an inmate must make a request for the diet. The request must contain written verification that the inmate is a member of a faith group that


DEFENDANT'S EXHIBIT B

requires adherence to a particular diet and the specific requirements of the diet. 20 Ill. Admin. Code §425.70(c).

5. Eligibility to receive an alternative diet for a specific religious reasons shall be determined by the facility chaplain who shall ordinarily confer with a religious leader or faith representative of the faith group at issue. 20 Ill. Admin. Code §425.70(c). The facility chaplain and religious leader or faith representative may interview the committed person. 20 Ill. Admin. Code §425.70(c).

6. This request and verification process is the same at all of the Department of Corrections' facilities and is required for all inmates requesting a religious diet.

7. Once the information provided by the inmate has been verified, the inmate is placed on the requested diet.

8. I am familiar with inmate Tiberius Mays, N-92625.

9. In December 2001, Mr. Mays professed to be a follower of the African Hebrew-Israelite religion and was on a vegan diet.

10. A vegan diet consists of fleshless meals where no kinds of meat or flesh products or dairy products are consumed.

11. Once the inmate has provided this documentation and the information is verified, the inmate signs a Religious Dietary Agreement.

12. The Religious Dietary Agreement requires that the inmate refrain from eating and possessing any foods that did not meet the requirements of the diet and that the inmate's participation in the diet would be closely monitored.

13. The Religious Dietary Agreement also provides that the diet could be terminated if the inmate was found to be non-compliant.

14. Mr. Mays signed such an agreement.

15. I received a copy of a December 29, 2001 Incident Report written by Correctional Food Service Supervisor Kurk Gaskill. (See attached Exhibit 1).

16. The Incident Report was forwarded to me by then Assistant Warden Wanda Bass.

17. The Incident Report stated that on December 29, 2001, Mr. Gaskill witnessed Mr. Mays go through the general serving line and take a regular food tray.

18. I was also aware that Mr. Mays had been written a Disciplinary Report on December 29, 2001 by Lieutenant German for eating fish and macaroni and cheese.

19. Food Service Supervisors have a duty to report violations of the vegan diet guidelines.

20. When I receive these reports, I take them very seriously due to special purchasing and additional money and efforts these diets require.

21. As a result of the information provided to me, I also decided to check Mr. Mays' commissary purchases to see if he had purchased commissary items that were prohibited by the vegan diet.

22. I discovered that on December 5 and 19, 2001, Mr. Mays had purchased items that contained milk products or meat, i.e. Hostess pies, pecan pies, Tuna, cheese, Snickers bar. (See attached Exhibit 2).

23. Given the information I received, I believed that Mr. Mays was not following the requirements of his religion, the vegan diet, and the Religious Dietary Agreement.

24. In accordance with Departmental procedure, I discussed this issue with Assistant Warden Bass.

25. Ms. Bass agreed that it appeared that Mr. Mays was not following the requirements of his religion, the vegan diet, and the Religious Dietary Agreement.

26. Therefore, Ms. Bass told me to follow the procedures established in the Religious Dietary Agreement and take Mr. Mays off of the diet.

27. On January 3, 2002, I wrote a Memorandum to the Dietary Manager, Kay Blue, stating that Mr. Mays had violated his religious diet agreement and that he would be off the diet until further notice. (See attached Exhibit 3).

28. There is no Departmental rule that requires a Chaplain to wait to remove an inmate from a religious diet until after a hearing and determination has been made about a Disciplinary Report concerning failure to follow the religious diet.

29. At no time was my decision to remove Mr. Mays from the vegan diet in retaliation for Mr. Mays having a lawsuit against Hill Correctional Center employees or because Mr. Mays had two prior Disciplinary Reports expunged.

30. Even if Mr. Mays had a lawsuit against Hill Correctional Center employees or had two prior Disciplinary Reports expunged, I would have still been required to remove Mr. Mays from his diet if it appeared that he was not following the diet.

31. A few days after Mr. Mays' removal from the vegan diet, we spoke. At this time, Mr. Mays stated that I did not have to resume his diet because he had taken care of it. Based on these statements, I did not pursue the issue any further.

32. Since Mr. Mays was found to be non-compliant with the vegan diet, the Religious Dietary Agreement provided that he would have had to wait 30 days before re-applying for reinstatement of the diet.

33. Reinstatement of the diet may have required Mr. Mays to re-verify his religion and religious dietary requirements since during this timeframe, the Chaplains were discovering that many of the individuals claiming to need or be on the vegan diet were lying in order to have the vegan diet.

**FURTHER AFFIANT SAYETH NOT.**

_____
Manuel Rojas

SUBSCRIBED and SWORN TO before me this ___4___ day of August 2005

"OFFICIAL SEAL"
MARGARET A. FOLEY
Notary Public, State of Illinois
My Commission Exp. 01/25/2006

NOTARY PUBLIC

-5-

**STATE OF ILLINOIS DEPARTMENT OF CORRECTIONS**
**ADULT AND JUVENILE DIVISIONS**
**INCIDENT REPORT**

Institution/Program: Hill Correctional Center / Dietary    Date and Time of Incident: 12/29/2001 Approx. 4³⁵

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☑   B. Were restraints/Force Used: YES ☐ NO ☑   C. Was Property Damaged: YES ☐ NO ☑
D. Have Apprehension Unit and / or Law Enforcement Agencies Been Notified: YES ☐ NO ☑   E. Were Arrests Made: YES ☐ NO ☑
F. Any Injuries/Hospitalizations: YES ☐ NO ☑   G. Were there Media Inquires: YES ☐ NO ☑

**Inmates/Staff Involved:**

| Name | I.D.# | Offense | Commitment Date |
|---|---|---|---|
| Mays | N92625 | | |

**Witnesses to Incident:**

| Name | I.D.# |
|---|---|
| S. German | Lt. |
| A. Buckley | C/O |
| J. Carson | CFSS-II |

Statement of Facts: (NARRATIVE) On the above date, approximate time, and program this supervisor witnessed inmate Mays come through the east serving line. Inmate Mays didn't come to the front of the line to receive his vegan diet. Mays went through the general line and accepted a tray consisting of a fried fish patty, 6oz. of Macaroni & Cheese, and the rest of the regular menu item's. Inmate Mays came in the door of dietary with his eye glasses on then removed them to go through the line in an attempt to not be noticed. As he was receiving his tray I brought it to the attention of CFSS-II J. Carson as to witness. After Mays was seated this supervisor brought the incident to the attention of Lt. S. German, as well as C/O A. Buckley in order to witness his consumption of this flesh and animal by-product food's. A memo will be sent to Chaplain Rojas. E.O.R.

Reporting Employee: Kurk Gaskill CFSS-II   Date/Time: 12/29/01 7:00

Person Calling In Report: _____   Person Accepting Report: _____   Date/Time: _____

Administrative Assessment: _____

Chief Administrative Officer: _____   Date/Time: _____

Distribution: Director
Deputy Director of Appropriate Division
Deputy Director of Bureau of Inspections and Audits
Legal Services (only if restraints/force used)
File

DC 434 (4/83)

**EXHIBIT 1**

# STATE OF ILLINOIS – DEPARTMENT OF CORRECTIONS

## ADULT AND JUVENILE DIVISIONS
## INCIDENT REPORT

**Institution/Program:** Hill Correctional Center/Dietary  **Date and Time of Incident:** 12/29/2001 Approx. 4%

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☑   B. Were restraints/Force Used: YES ☐ NO ☑   C. Was Property Damaged: YES ☐ NO ☑
D. Have Apprehension Unit and / or Law Enforcement Agencies Been Notified: YES ☐ NO ☑   E. Were Arrests Made: YES ☐ NO ☑
F. Any Injuries/Hospitalizations: YES ☐ NO ☑   G. Were there Media Inquires: YES ☐ NO ☑

**Inmates /Staff Involved:**

| Name | I.D.# | Offense | Commitment Date |
|---|---|---|---|
| Mays | N92625 | | |

**Witnesses to Incident:**

| Name | I.D.# |
|---|---|
| S. German | Lt. |
| A. Buckley | C/O |
| J. Carson | CFSS-II |

**Statement of Facts: (NARRATIVE)** On the above date, approximate time, and program this supervisor witnessed inmate Mays come through the east serving line. Inmate Mays didn't come to the front of the line to receive his vegan diet. Mays went through the general line and accepted a tray consisting of a fried fish patty, 6oz. of Macaroni & Cheese, and the rest of the regular menu items. Inmate Mays came in the door of dietary with his eye glasses on then removed them to go through the line in an attempt to not be noticed. As he was receiving his tray I brought it to the attention of CFSS-II J. Carson as to witness. After Mays was seated this supervisor brought the incident to the attention of Lt. S. German, as well as C/O A. Buckley in order to witness his consumption of this flesh and animal by-product food's. A memo will be sent to Chaplain Rojas. E.O.R.

**Reporting Employee:** Kurk Gaskill CFSS-II  **Date/Time:** 12/29/01 7:00 p.m.

Person Calling In Report     Person Accepting Report    Date/Time

**Administrative Assessment**

**Chief Administrative Officer:** Mark A. Pierce  **Date/Time:** 10/30/01 1:23 PM

Distribution:  Director
Deputy Director of Appropriate Division          Legal Services (only if restraints/force used)
Deputy Director of Bureau of Inspections and Audits   File

DC 434 (4/83)
IL 426-0410

Date: 4/2/2005
Time: 3:38pm
d_list_sales_history

Hill Correctional Center
Inmate Commissary Fund

1:04-cv-01001-HAB-JAG   # 65-2   Page 8 of 13

Page 1

Sales History Report

REPORT CRITERIA - Ticket: Start thru End;   Date: 12/01/2001 thru 02/01/2002;   Product: All Products;
Warehouse: Start thru End;   User: All;   Inmate: N92625

| Item | Quantity | Price | Amount |
|---|---|---|---|

**Date:** 12/05/2001   N92625   Mays, Tiberius   Housing Unit: HIL-OR-01-22
**Ticket:** 213012   Whse: 1 Inmate Commissary   User: 23 - Vandeveer, James

| Item | Quantity | Price | Amount |
|---|---|---|---|
| P000034 Hostess Pie, Cherry | 2 | .44 | .88 |
| P000036 Hostess Chocolate Donettes | 2 | .44 | .88 |
| P000012 Soda, Pepsi | 1 | .78 | .78 |
| P000156 Pecan Pie | 4 | .41 | 1.64 |
| P000111 Little Debbie Nutty Bars | 1 | 1.07 | 1.07 |
| P000226 Tuna Fresh Catch | 5 | .98 | 4.90 |
| P000065 Soap, Ivory | 2 | .56 | 1.12 |
| ~~P000029~~ [illegible, struck through] | 6 | .38 | 2.28 |
| P000189 Kitchen Cooked Barbeque | 6 | .32 | 1.92 |
| P000038 Hostess Honey Bun | 2 | .44 | .88 |
| **Ticket Total:** | | | **16.35** |

**Date:** 12/19/2001   N92625   Mays, Tiberius   Housing Unit: HIL-OR-01-22
**Ticket:** 214774   Whse: 1 Inmate Commissary   User: 20 - Horney, Wendell

| Item | Quantity | Price | Amount |
|---|---|---|---|
| P000147 Toothpaste, Clear | 2 | .80 | 1.60 |
| P000088 Toothbrush, Tek Excel | 1 | .90 | .90 |
| P000185 Popcorn, Cheese | 6 | .32 | 1.92 |
| P000189 Kitchen Cooked Barbeque | 6 | .32 | 1.92 |
| P000034 Hostess Pie, Cherry | 4 | .44 | 1.76 |
| P000036 Hostess Chocolate Donettes | 4 | .44 | 1.76 |
| P000038 Hostess Honey Bun | 4 | .44 | 1.76 |
| P000156 Pecan Pie | 5 | .41 | 2.05 |
| P000027 Candy Snickers | 12 | .38 | 4.56 |
| P000255 Greeting Cards | 5 | .63 | 3.15 |
| P000011 Stamp | 5 | .34 | 1.70 |
| P000065 Soap, Ivory | 1 | .56 | .56 |
| P000112 Little Debbie Peanut Clusters | 1 | 1.23 | 1.23 |
| P000203 Hot Sauce, Bago | 1 | .62 | .62 |
| P000200 Picante, Bago | 1 | .53 | .53 |
| P000232 Coffee, Keefe 3oz | 1 | 2.00 | 2.00 |
| **Ticket Total:** | | | **28.02** |

**Date:** 01/03/2002   N92625   Mays, Tiberius   Housing Unit: HIL-OR-01-22
**Ticket:** 215736   Whse: 1 Inmate Commissary   User: 55 - Welch, Patrick

| Item | Quantity | Price | Amount |
|---|---|---|---|
| P000005 Razor, Bic | 2 | .10 | .20 |
| P000013 Soap, Tone | 2 | .87 | 1.74 |
| P000184 Kitchen Cooked Plain Chips | 6 | .32 | 1.92 |

EXHIBIT 2



George H. Ryan
Governor

Donald N. Snyder Jr.
Director

Hill Correctional Center / 600 Linwood Road / P.O. Box 1327 / Galesburg, IL 61401 / Telephone: (309) 343-4212 / TDD: (800) 526-0844

## MEMORANDUM

**DATE:** January 3, 2002

**TO:** Kay Blue
Dietary Manager

**FROM:** Manuel Rojas
Chaplain II

**SUBJECT:** Inmate Mays  N-92625

Please be advised that Inmate Mays has violated his religious diet agreement according to the incident report written by CFSSII Gaskil December 29, 01. Therefore Inmate Mays will be off the diet until further notice.

Cc.
Duty Warden
A/W Hulick
A/W Bass
Shift Commanders 3-11
Dietary C/O's
File.



EXHIBIT
3

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | Mays v. Snyder, et al., |
| | ) SS. | Case No.: 04-1001 |
| COUNTY OF KNOX | ) | |

## AFFIDAVIT

I, **Sheldon German**, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1. On December 29, 2001, I was employed by the Illinois Department of Corrections as a Lieutenant. I have since retired.

2. On December 29, 2001, I was in the Dietary.

3. Correctional Food Service Supervisor Kurk Gaskill informed me that Mr. Mays had went through the serving line and took a regular food tray, i.e. non-vegan, even though Mr. Mays was on a vegan diet.

4. As a result of this information, I then observed Mr. Mays eating a fish sandwich and macaroni and cheese.

5. These items are not served on the vegan diet at Hill Correctional Center and as a vegan, Mr. Mays is not to consume said products as they are non-vegan.

6. At the time, I was aware that in order to receive the vegan diet, among other things, an inmate had to sign a Religious Dietary Agreement. Said Agreement required that the inmate refrain from eating and possessing any foods that did not meet the requirements of the diet and that the inmate's participation in the diet would be closely monitored.

7. At the time, I was also aware that a vegan diet required that special foods be purchased, prepared, and served to the inmate on said diet.

8. Therefore, since special efforts and money had been made to provide the vegan food trays, it was necessary to insure that those individuals who had requested a vegan diet receive their vegan diet food tray and not a non-vegan food tray.

-1-

DEFENDANT'S EXHIBIT

9. Pursuant to Departmental rule 20 Ill. Admin. Code §504.30(b), if I witness or if I receive information from a reliable witness, that an inmate is violating Departmental rules, I am required to write a Disciplinary Report.

10. Since I witnessed Mr. Mays abuse his vegan diet by eating a regular food tray, I wrote inmate Tiberius Mays, N-92625 a Disciplinary Report for violating Departmental rules 308 – Contraband/Unauthorized Property and 310 – Abuse of Privileges. (A copy of said Disciplinary Report is attached hereto as Exhibit 1).

11. At no time did I write the December 29, 2001 in retaliation for Mr. Mays having a lawsuit against Hill Correctional Center employees or because Mr. Mays had two prior Disciplinary Reports expunged.

12. As a Lieutenant, I would not have looked at an inmate's masterfile prior to writing a Disciplinary Report to see if it contained Disciplinary Reports, hearings concerning Disciplinary Reports, and any discipline imposed concerning same.

13. As a Lieutenant, I had no personal involvement in the handling of inmate lawsuits against Hill Correctional Center or it's staff.

14. Even if Mr. Mays had a lawsuit against Hill Correctional Center employees or had two prior Disciplinary Reports expunged, I would have still been required to write Mr. Mays a Disciplinary Report based on the information provided to me and what I observed.

15. Once I wrote the December 29, 2001 Disciplinary Report, my involvement with said Report was finished. It was then up to the institutional Adjustment Committee or Program Committee to determine if the facts stated in the Disciplinary Report did, in fact, violate Departmental rules.

16. I was not involved in the disciplinary hearing concerning the December 29, 2001 Disciplinary Report. Nor, was I asked whether or not Mr. Mays should be found guilty of the Disciplinary Report or what, if any, discipline he should receive.

17. As a Lieutenant, I was not involved in decisions concerning whether or not an inmate was to receive a religious diet.

18. Nor, was I involved in determining whether or not Mr. Mays should be removed from the vegan diet.

**FURTHER AFFIANT SAYETH NOT.**

*Sheldon German*
Sheldon German

SUBSCRIBED and SWORN TO before me this 27 day of July, 2005.

NOTARY PUBLIC

"OFFICIAL SEAL"
MARGARET A. FOLEY
Notary Public, State of Illinois
My Commission Exp. 01/25/—

-3-

R2 W17

State of Illinois -- Department of Corrections
**DISCIPLINARY REPORT**

Page 1 of 1

Primary Report: Dec. 29, 2001
Date

☐ Investigative Report _____ Date

Committed Person: Mays   No. N92625   Facility: Hill CC

Observation Date: 12-29-01   Time: app. 4:55 ☒am ☐pm   Location: Dietary

Lt. German
PRINT Employee's Name

Lt. German 9991 12-29-01 app. 7:50
Employee's Signature/Date/Time

Offense: 504 A 308 Contraband/Unauthorized Property = 10 abuse of Privileges
       B
       C

Observation: On the above date and time this Lt. was informed by CFSSI Gaskill that inmate Mays had went through the serving line and took a regular tray eventhough Mays is on a vegan diet. Inmate Mays was seen eating fish sandwich, macaroni and cheese. Inmate Mays abused his privilege of being on vegan diet and getting soymilk by taking the regular tray, which he isn't authorized to do. CFSSI Gaskill is writing a DC 434 about the incident and writing a note to the chaplin. This Lt. recommends Mays be removed from his [illegible] diet.

Witnesses, if any: CFSSI Gaskill

NOTE: Use continuation page if necessary to describe observation and/or list witnesses.

☐ Temporary Confinement   ☐ Investigative Status   Reasons: _____

_____   _____
PRINT Name                 Shift Supervisor's Signature and Date
                           (For Community Correctional Centers, Chief Adm. Off.)

☐ Confinement Reviewed by Reviewing Officer   Comment: _____

_____   _____
PRINT Name                 Signature/Date

☒ MAJOR, submitted to Adjustment Committee   ☐ MINOR, submitted to Program Unit

Capt W. Rockett             Capt W. Rockett 12/29/01
PRINT Name                  Reviewing Officer's Signature and Date

☐ Reviewed by Hearing Investigator: _____
   (Adult Division Major Reports Only)   PRINT Name   Signature and Date

PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS
You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS
You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

T. Mays N92625                     ☐ Committed Person Refused to Sign
Committed Person's Signature and Number

C/O Scheland        C/O Scheland 9891      12/30/01  8:00 ☒am ☐pm
PRINT Serving Employee's Name   Serving Employee's Signature   Date and Time Served

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offense Date: _____

_____
Committed Person's Signature and Number

- - - (DETACH AND RETURN TO THE ADJUSTMENT COMMITTEE OR PROGRAM UNIT PRIOR TO THE HEARING) - - -

I would like the Adjustment Committee or Program Unit to consider calling the following witnesses regarding disciplinary report of _____ Date

NAME OF WITNESS: FS Gaskill   Number/Cell/Title: _____
Witness can testify to: He did not say anything to me about me not having a vegan tray

NAME OF WITNESS: Sutton   Number/Cell/Title: R2-D-72
Witness can testify to: I received my vegan tray I gave him my tray for his tray to eat some fruit. Lt. German saw me with the two trays

DC 7208 (Rev. 4/86)   Distribution: 1) Master File; 2) Committed Person;   Committed Person's Name and Number
IL 426-0361                      3) Facility; 4) Facility
                                                                Feban Mays N92625

EXHIBIT
1