**ORIGINAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

TIBERIUS MAYS, N-92625,        )
                               )
            Plaintiff,         )   NO. 04-1001
                               )
        v.                     )
                               )   DEPOSITION OF
DONALD SNYDER, et al.,         )   TIBERIUS MAYS
                               )
            Defendants.        )
                               )

APPEARANCES:

   ATTORNEY JULIE L. MORGAN,
   Assistant Attorney General,
   500 South Second Street,
   Springfield, Illinois, 62706,

       Counsel for the Plaintiffs.


DEPOSITION OF TIBERIUS MAYS (pro se), taken at the Dixon Correctional Center, 2600 North Brinton Avenue, Dixon, Illinois, on June 15, 2005, commencing at 11:15 a.m., before J. K. Edeus, Certified Shorthand Reporter and Notary Public in and for the State of Illinois, in pursuance to agreement of the parties in the above-entitled action.


DEFENDANT'S EXHIBIT D

you and another inmate were sharing food off of each other's tray or something. You had your vegetables and -- someone had the vegetables and someone had the fruit. Is that what you are alleging happened with these trays?

A. I would share some of my food with other guys from time to time and if they have fruit that they didn't want to eat they would share it with me. Eating fruit is vegan compliant and I would just give them my tray and they'd give me their tray. That happened on the first ticket that I was speaking of with Mrs. Fritts (phonetic), but in this case here with Lieutenant German and Defendant Gaskill that's what I'm saying happened, because that is what happened. They saw me with somebody else's tray, but I wasn't eating fish or macaroni.

Q. Okay. Whose tray did you take up to be disposed of, yours or the other inmate's?

A. I took my stuff up.

Q. Okay. Who was the other inmate that you were sharing food with?

A. His name was Sutton. That's all I can -- I think that's his name. It's in the bottom of --

```
 1        report is false.  How is his incident report
 2        false?
 3    A.  Because I got my tray and not the tray that he
 4        claimed.
 5    Q.  Do you know if it was just a mistake in what he
 6        was witnessing -- in other words, do you think
 7        it was just an innocent mistake, if he made such
 8        a mistake or do you think he purposely wrote
 9        down something false?
10    A.  Honestly I don't know why he did what he did.
11    Q.  Okay.  Do you believe it's possible that
12        Mr. Gaskill actually believed that you had a
13        wrong food tray or do you believe that it was
14        clear based upon what was at the table that you
15        actually had your vegan tray?
16    A.  Again, I don't -- I don't know what -- I can't
17        speak for Mr. Gaskill.  I don't know why he did
18        what he did.
19    Q.  Okay.  At the table that you're sitting at
20        there at Hill how many people can sit at the
21        table?
22    A.  At least 20 people or more.
23    Q.  Okay.  Do you remember who was sitting around
24        you in the general vicinity on the day that this
```

1   commissary does not -- nowhere near have enough
2   items for a person that's a vegan to buy, so you
3   know, I bought peanuts also and I bought potato
4   chips and I bought oatmeal and I bought stuff
5   like that that's vegan compliant and I bought
6   other things and traded them to get other stuff.
7   That's what I had to do. You know, I was forced
8   to do that, you know.
9  Q. Were you ever put on the vegan diet at
10     Danville?
11 A. Yes.
12 Q. When was that?
13 A. It was somewhere in I think October or November
14    of 2003.
15 Q. How did that come about?
16 A. I had a friend e-mail an African Hebrew
17    Israelite of Jerusalem in Israel -- Dimona,
18    Israel and also an organization in Chicago. The
19    organization in Dimona, Israel e-mailed my
20    friend that was doing a time I believe of the
21    feast of trumpet or either it was the feast of
22    the Yom Kippur Day of Atonement and they
23    forwarded the information to the Chicago chapter
24    at which time the minister that's in charge of

1  Q.   October or November 2003.
2  A.   Yeah, yes.
3  Q.   Okay.
4  A.   About 300 (sic) days.
5  Q.   And I take it you believe Defendant German's
6       disciplinary report is retaliatory in nature
7       because you had two other previous disciplinary
8       reports expunged?
9  A.   Yes.
10 Q.   Do you know, did Defendant German ever tell you
11      that he knew about the two other disciplinary
12      reports and their expungement?
13 A.   Of course not.
14 Q.   Do you know if Defendant German knew about
15      those two other disciplinary reports and their
16      expungement?
17 A.   A lieutenant can find out any information he
18      wants to about a prisoner's disciplinary record.
19 Q.   Do you know if Defendant German went through
20      your master file to see what your disciplinary
21      record was?
22 A.   A lieutenant can access information on a
23      computer at Hill. They have computers in areas
24      where a person can hit your name up. Also, he

# CERTIFICATE

I, J. K. Edeus, a Certified Shorthand Reporter in and for the State of Illinois, do hereby certify that, pursuant to the agreement herein contained, there came before me on the 15th day of June 2005, at 11:15 a.m. at the Dixon Correctional Center, 2600 North Brinton Avenue, Dixon, Illinois, the following-named person, to-wit: Tiberius Mays, who was duly sworn to testify to the truth and nothing but the truth of his knowledge concerning the matters in controversy in this cause; that he was thereupon examined on his oath and his examination reduced to writing under my supervision; that the deposition is a true record of the testimony given by the witness, and that the reading and signing of the deposition by said witness were not expressly waived.

I further certify that I am neither attorney or counsel for, nor related to or employed by, any of the parties to the action in which this deposition is taken, and further, that I am not a relative or employee of an attorney or counsel employed by the parties hereto or financially interested in the action.

In witness whereof I have hereunto set my hand this 22nd day of July 2005.

_____
J. K. Edeus
Certified Shorthand Reporter
IL License No. 084-003820
Ashton, Illinois 61006

OFFICIAL SEAL
JULIE K EDEUS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 10/01/06

80

# ERRATA SHEET OF TIBERIUS MAYS

I have read the foregoing transcript of my deposition taken on June 15, 2005, and

( )  It is a true and correct transcript of my deposition given on the day and date aforesaid.

(Or)

(X)  I wish to make the following changes to my deposition:

Pg _8_ Ln _9_ Change _17 years and six days_

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

Pg ___ Ln ___ Change _____

DATE: _July 27, 2005_        _Tiberius Mays_ N92625
                             TIBERIUS MAYS

| STATE OF ILLINOIS | ) | Mays v. Snyder, et al., |
| --- | --- | --- |
| | ) SS. | Case No.: 04-1001 |
| COUNTY OF VERMILION | ) | |

## AFFIDAVIT

I, **Marvin Cooley**, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1. In 2002 and 2003, I was employed by the Illinois Department of Corrections as the Clothing Storeroom Supervisor at the Danville Correctional Center and continue to remain in said position.

2. As part of my duties, I provide inmates at Danville with clothing, bedding, and linens.

3. When Mr. Tiberius Mays, N-92625 transferred to Danville Correctional Center, he had the following clothing items: 1 pair of house slippers, 1 pair of shower shoes, 1 pair of gym shoes, 1 belt, 3 boxer undershorts, 2 T-shirts, 1 thermal underwear, 2 pairs of socks, 2 sweatpants, 2 sweatshirts, 1 jacket, 1 cap, 1 hat, 1 pair of gloves, 1 pair of gym shorts and 2 blue shirts that were unauthorized.

4. When an inmate transfers to Danville, he is provided a winter jacket, three shirts, three pants, one pair of tennis shoes, three pairs of socks, three t-shirts, and three briefs.

5. The amount of the items provided may vary depending on clothing availability and how may of a particular item an inmate already has in his possession.

6. When Mr. Mays transferred to Danville he would have been provided the above clothing.

-1-



7. At this time, I do not recall how many pieces of each type of clothing Mr. Mays was provided.

8. Inmates who were in need of clothing and who followed the procedure of submitting a request slip detailing their needs would be provided clothing, if they were eligible. The option of approving or not approving any clothing issuance depended on the conditions and availability of the clothing to be exchanged.

9. Providing inmate clothing for the hundreds of inmates at Danville is very expensive.

10. Prior to 2002, the Department of Corrections decided that due to budgetary constraints and the rising costs associated with running the Department, only inmates who have outside work assignments at Danville may be provided a raincoat, overshoes, rubber boots, rubberized gloves, leather gloves, or cotton gloves free of charge.

11. Inmates who did not have outside work assignments were able to purchase these types of items from the inmate commissary.

**FURTHER AFFIANT SAYETH NOT.**

_____
Marvin Cooley

SUBSCRIBED and SWORN TO before me this 28th day of July, 2005.

_____
NOTARY PUBLIC

OFFICIAL SEAL
KELLIE L. PETERSEN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES JULY 1, 2007

-2-

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | *Mays v. Snyder, et al.,* |
|  | ) SS. | Case No.: 04-1001 |
| COUNTY OF LEE | ) | |

### AFFIDAVIT

I, **Mary Woodard**, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1. I am employed by the Illinois Department of Corrections as a Health Information Associate in the Medical Records Department at the Dixon Correctional Center.

2. As a Health Information Associate it is my responsibility, among other things, to ensure the maintenance and accuracy of inmate medical records for inmates housed at Dixon Correctional Center.

3. Mr. Tiberius Mays, N-92625 has been incarcerated at the Dixon Correctional Center since April 30, 2003.

4. At the request of the Illinois Attorney General's Office, I looked through Mr. Mays' medical records for the time period he was incarcerated at the Danville Correctional Center, March 20, 2002 to April 30, 2003.

5. Specifically, I was asked to review said records to see if Mr. Mays went to the Health Care Unit complaining of cold or cold related symptoms and, if so, what treatment was provided.

6. My review of Mr. Mays' medical records for March 20, 2002 to April 30, 2003 reveals the following:

- Mr. Mays was seen in the Health Care Unit on March 23, 25, April 25, May 4, 16, 17, July 24, September 24, October 24, 31, November 27, December 12, 23, 26, 2002; January 6, 10, 24, March 6, April 7, and 14, 2003.


DEFENDANT'S EXHIBIT F

- Of the times Mr. Mays was seen in the Health Care Unit, the only time noted in which Mr. Mays complained of having a cold or cold like symptoms was on September 24, 2002.

- On September 24, 2002, it was observed that Mr. Mays' lungs were clear but that he was partially congested when he talked. Mr. Mays was given CTM, an allergy/cold medicine and was to take one tablet twice a day for 6 days. Mr. Mays was also given an Elbuterol inhaler refill.

- Mr. Mays has a history of having asthma.

FURTHER AFFIANT SAYETH NOT.

"OFFICIAL SEAL"
JAMES W. MARTENS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11/4/06

_Mary Woodard_
Mary Woodard

SUBSCRIBED and SWORN TO before me this 28th day of July, 2005.

_James W Martens_
NOTARY PUBLIC

-2-